LAW OFFICES OF LAWRENCE S. KATZ, P.A.
Lawrence S. Katz
*Admitted Pro Hac Vice,*
FBN: 108268
Two Datran Center Suite #1511
9130 S. Dadeland Blvd.
Miami, FL 33156
Tel: (305) 670-8656
Email: lkatz@katzfamilylaw.com

SEYMOUR FAMILY LAW
Brent D. Seymour (SBN 148737)
940 Adams Street, Suite C
Benicia, CA 94510
Tel: (707) 297-6686
Email: brentseymour@seymour.law

Attorneys for Respondent

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SITTING AS A TREATY TRIBUNAL UNDER
ARTICLE III SECTION 2 OF THE UNITED STATES CONSTITUTION
CONCURRENT JURISDICTION CONFERRED BY 22 U.S.C. 9001 ET SEQ.

| | |
|---|---|
| SHARIFA ANWARI<br><br>    Petitioner,<br><br>    vs.<br><br>AHMAD MOMAND,<br><br>    Respondent. | Case No. 3:22-cv-04357-VC<br><br>RESPONSE TO PETITION FOR RETURN OF MINOR CHILD TO THE REPUBLIC OF GERMANY |

The Convention on the Civil Aspects
of International Child Abduction,
done at the Hague on 25 Oct. 1980 [The Convention]
---------------
International Child Abduction Remedies Act
22 U.S.C. 9001 et seq.

Respondent, AHMAD MOMAND, a resident of the State of California, responds to the Petition brought by, SHARIFA ANWARI, requesting the return of the parties' Child to Germany.  The Child is not being wrongfully retained by Respondent because Petitioner, with full knowledge freely consented to the Child moving to the United States permanently.  Furthermore, the petition was not filed within one year of the alleged removal/retention and the Child is well settled in California.

## I. PREAMBLE

Respondent admits that the petition is brought pursuant to The Convention of the Civil Aspects of International Child Abduction, done at the Hague on 25 October 1980 ("Convention") and 22 U.S.C. § 9001, the International Child Abduction Remedies Act ("ICARA"), as well as California Family Code §§ 3441 to 3457.  The Convention went into effect on July 1, 1988, between the United States and Germany.

Respondent has no personal information regarding the allegation that the District Attorney's Office has been asked by the California Attorney General to appear as a friend of the court to present Petitioner's request for return of the child.  However, Respondent admits that this procedure is commonly used where the proceedings are commenced by submitting an application to the Central Authority.  Respondent further alleges that the District Attorney's office does not represent Petitioner in these proceedings.

Respondent admits that the objects of the Hague Convention are as stated by Petitioner.

Respondent admits that the United States and Germany are signatories to the Convention and are both Contracting States.

## II. JURISDICTION

Respondent admits that this court has original jurisdiction pursuant to 28 USC § 1331 (federal question) in that Petitioner's cause of action arises under 22 U.S.C. 9001 et seq., ICARA. 28 USC § 9003 (a) provides "[t]he courts of the States and the United States district courts shall have concurrent

original jurisdiction of actions arising under the Convention." Concurrent jurisdiction of a federal statutory claim does not preclude removal of a state court action on the claim. *Ullmo ex rel. Ullmo v. Gilmour Academy*, 273 F.3d 671, 680 (6th Cir. 2001).

Respondent admits that 22 U.S.C. 9001(b)(4) states "The Convention and this chapter empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims."

### III. STATUS OF PETITIONER AND CHILD

Respondent is without sufficient information or knowledge at this point with regard to Petitioner's claimed right of custody, and on that basis denies the allegations.

Respondent admits that Petitioner is the mother, and that Respondent is the father, of the parties' Child, who was born in Athens, Greece in mid 2016.

Respondent admits that the Child lived with Petitioner from birth until December 30, 2020 and further alleges that from April 2019 until December 2020, the Child also lived with Respondent. Respondent denies the allegation that he abducted the Child. Respondent is without sufficient information or belief with regard to Petitioner's allegation that the Child lived also with his two older sisters, and on that basis can neither admit nor deny the allegations. Respondent is without sufficient information or belief with regard to Petitioner's allegation that she provided food, clothing, daily care, and recreational activities for the Child and on that basis denies the allegations.

Petitioner denies the allegation that he only got to know the Child when he was eight months old and or that he only saw him in Germany an unknown number of times.

Respondent denies that he wrongfully removed Child from Germany. The removal was done with Petitioner's full knowledge and consent. Respondent further denies that he violated any order from Darmstadt Local Family Court. That order was appealed from and vacated to remove any regulation of Respondent's contact rights with the Child. The Appellate Court further stated that Petitioner had agreed that the Child would move to the U.S. with Respondent as soon as he could be naturalized in the

1  U.S. A copy of the German Appellate decision and certified English translation is attached hereto as
2  Exhibit A.
3      Respondent admits that he requested to take Child to the United States in 2018.  Respondent
4  further admits that he resided intermittently in Germany for a period of eight months in 2019, during
5  which time he developed a deep and loving relationship with the Child.
6      Respondent admits that the German Court ruled against his request to take the Child to the U.S.
7  in 2018.
8      Respondent admits that he left Germany with the Child on or about December 28, 2020.
9  Respondent denies that the purpose of the trip was to visit the Child's grandfather.  Respondent denies
10 that he promised to return the Child in 10 days.  The purpose of the trip was the Child's permanent move
11 to the U.S. pursuant to the agreement of the parties and Petitioner's explicit consent.  Respondent admits
12 that he did not return the Child to Germany, but denies that there was any expected return date given that
13 the agreed upon purpose of the trip was the permanent relocation of the Child to the U.S.  Respondent
14 denies that he informed Petitioner three months later that he would be keeping the Child in the U.S.
15 indefinitely, since Petitioner had already consented to that.
16     Respondent admits that Petitioner submitted a Hague Application for the return of the Child to
17 Germany.  Respondent is without sufficient information or belief with regard to when Petitioner
18 submitted that application or how it was forwarded to eventually reach the Santa Clara County District
19 Attorney's Office and, on that basis, denies the allegations.
20     Respondent is without sufficient information and belief with respect to the investigations
21 conducted by the Santa Clara County District Attorney's Office Child Abduction Unit and can neither
22 admit nor deny the allegations.
23     With respect to the allegation that the Child was an habitual resident of Germany, within the
24 meaning of Article 3 of the Convention, Respondent denies that Petitioner has alleged sufficient facts to
25 establish habitual residence.  Respondent denies that there was a wrongful removal.
26

With respect to Petitioner's residency in Germany, Respondent is without sufficient information or belief to either admit or deny the allegation. Respondent does admit that he believes that Petitioner is living in a refugee camp located in Germany.

### IV. WRONGUL REMOVAL AND/OR RETENTION OF CHILD

Respondent denies that he wrongfully removed the Child from Petitioner within the meaning of Article 3 of the Convention. Respondent further denies that he continues to wrongfully retain the Child in the U.S.

Respondent is without sufficient information or belief to either admit or deny the proffered language and translation of Section 1626 of the German Civil Code.

Respondent admits that he and the Child are residing in San Jose, California. With respect to Petitioner's interpretation of the one year and settled defense, Respondent addresses that defense hereinbelow. However, Respondent admits that the present proceedings were commenced more that one year after the alleged removal or retention.

### V. CUSTODY PROCEEDINGS

Respondent admits that the courts of this state are required to stay any custody proceedings regarding the Child until these proceedings have been resolved.

### VI. RESPONDENT'S STATEMENT OF BACKGROUND FACTS

The Parties met and married in Afghanistan in 2015. Respondent was working in Afghanistan as a US Department of Defense contractor. At the time of their marriage, Petitioner had two daughters from a previous relationship.

Because of the war in Afghanistan, Petitioner and her two daughters subsequently fled from to Iran, then to Turkey, and then to Greece. She was pregnant with the Child at the time. The Child was born in Athens in mid 2016. Respondent found them in Athens. Petitioner contacted Respondent when the Child was a year old and asked him to come to Athens to get the Child and take him to the U.S. During this time, she also contacted Respondent by text to send her money, which he did.

Respondent went to Athens in late 2017. Petitioner then changed her mind about the Child going to the U.S. Petitioner and the three children subsequently relocated to Germany and were living in a refugee camp.

In 2018, Respondent, who was still working in Afghanistan, went to Germany to see Petitioner and their Child. Petitioner refused him contact with the Child. As a result, Respondent filed a petition for primary custody with the German court. On December 5, 2018, the court ordered limited supervised contact - Respondent could see the Child every second week on Thursday and Friday for two hours while being supervised by a social worker.

Respondent appealed this order on January 4th 2019. On May 6th 2019, the appeals court in Frankfurt issued its Decision, attached hereto as Exhibit A. The appeals court vacated the initial court's order for limited supervised contact and replaced it by the statement that there currently is no need to regulate contact rights. In its decision, the court noted that Petitioner had agreed that the Child would move to the U.S. to live with Respondent once he was naturalized as a U.S. citizen.

An independent attorney notary drafted and notarized the agreement of the parents from January 16th 2019, as to the Child moving to the USA to be with his father.

It took Respondent a significant time to get the U.S. Consular Report of Birth Abroad issued. It seems that the US Consulate was making sure that everything was in order. In addition, a paternity test was done and both parents were questioned at the Consulate and there was some back and forth with the Greek authorities where the child was born.

Once the passport was issued, Respondent and the Child relocated to the U.S. as agreed and consented to by Petitioner.

### VII. RESPONDENT'S AFFIRMATIVE DEFENSES
### FIRST AFFIRMATIVE DEFENSE OF CONSENT.

Petitioner consented to the Child moving to and remaining in the United States to live with Respondent. The Convention, Article 13 (a) states in part, "the judicial or administrative authority of the

1    requested State is not bound to order the return of the child if the person, ….. which opposes its return
2    establishes that a) the person …. having the care of the person of the child …. consented to or
3    subsequently acquiesced in the removal or retention."

4    On November 13th 2018, the initial custody hearing in the German court was held. Petitioner
5    attached a copy of the German custody order to the petition.  However, Petitioner has misled this Court
6    by omitting the fact that Respondent appealed that order and it was set aside.  A true and correct copy of
7    the Appellate decision, issued May 6, 2019, is attached hereto as Exhibit A.  The Petitioner was in actual
8    attendance at the hearing with her attorney.  The Appellate Court stated that a significant factor in its
9    decision was that Petitioner had stated that she agreed to the Child moving to the U.S. to live
10   permanently with Respondent.  The timeline of events following the issuance of the initial order is as
11   follows:

12   The day following the issuance of the initial order in November 2018, the Parties met at a
13   restaurant. They initially agreed to rent a place for Petitioner, Respondent, and the children to reside
14   together in Germany. Petitioner then asked to meet again on November 21, 2018. at a restaurant and at a
15   kids play area; however, she did not show.

16   The German judge had allowed Respondent to have supervised visitation rights with his son in
17   December 2018 at a designated home.  Several months later the Parties met with the supervisor to
18   discuss the Child's future and wellbeing. Petitioner was convinced that moving in together would be a
19   good idea. Therefore, in April of 2019, Petitioner, her two daughters and the Child moved into a home
20   that Respondent rented for 5000 euros per month in Frankfurt, Germany.

21   In April 2019, Respondent had to return to Afghanistan due to his work with the U.S.
22   Department of Defense managing waste removal for the military bases. Prior to departing the Parties
23   agreed once again that the Child would permanently move to the United States to live with Respondent.
24   On April 4, 2019, the Parties signed a notarized document authorizing the Child's relocation to the
25   United States.

26

Respondent began the Child's naturalization process by filing documents with the U.S. Consulate in Frankfurt before departing. However, the process was put on hold because the child's name was incorrectly listed on his Greek birth certificate. Respondent contacted a Greek attorney to assist in amending the birth certificate.

Respondent departed to Afghanistan in April 2019 and returned to Germany for the Child's birthday in July 2019. After his return, he enrolled the Child at the Frankfurt International School (FIS).

Respondent had filed an appeal of the initial custody order and the hearing was held on May 7, 2019. Petitioner attended the hearing and acknowledged that she agreed with the Child moving with the Respondent to the United States. The Court entered its order on May 9, 2019, which is attached hereto as Exhibit "A"

In mid-July 2019 Respondent left again for work in Afghanistan and returned to Germany on August 20, 2019. He attended the Child's first day at pre-school on August 21, 2019. Respondent stayed in Germany until September 27, 2019, at which time he returned to work for the U.S. Government in Afghanistan.

Respondent returned to Germany on November 7, 2019, and remained until December 4, 2019. His parents arrived in Germany from the United States the same day he left for Afghanistan to stay with his Petitioner, the Child and Petitioner's daughters from a prior relationship in the home he rented.

On January 5th, 2020, Petitioner abruptly left the home at in Frankfurt Germany claiming that Respondent was cheating on her with a Russian girlfriend, which was false. She immediately withdrew the Child from school and returned to the refugee camp. Therefore, the Child did not attend the remainder of his pre-school year.

On July 21, 2020, the Parties and the Child went to lunch. The same day, Petitioner moved back into the rented house on in Frankfurt Germany. Respondent re-enrolled the Child in the International School as of August 2020. The Parties and the Child continued their lives together until Respondent had to return to Afghanistan for work on September 13, 2020. He returned to Frankfurt, Germany on October

1  29, 2020 to complete the Child's documents for his Consular Report of Birth Abroad at the US
2  Consulate in Frankfurt, Germany. Once the Child's U.S. passport was received, the Parties went to a
3  notary to execute documents permitting the Child to reside in the United States. Respondent videotaped
4  Petitioner giving her consent and acknowledging her understanding of the documentation.  Once the US
5  emergency passport was received, Petitioner took Respondent and the Child to the Frankfurt airport on
6  December 30, 2020, where Respondent and the Child departed for the U.S. on a Lufthansa flight.  The
7  tickets were one-way.

Respondent had full knowledge of the move and gave her consent.

### SECOND AFFIRMATIVE DEFENSE WELL-SETTLED ART. 12

As his Second Affirmative Defense, pursuant to Article 12 of the Convention, Respondent states that the Child is well-settled in San Jose, California and is accustomed to his surroundings. The Petition, on its face, demonstrates that Petitioner commenced these proceedings over 1 year after the alleged wrongful retention of the Child.

The U.S. Supreme Court has never determined what is considered "well settled." However, in addressing the applicability of whether the 1-year period in Article 12 is subject to equitable tolling, the Court let stand the decision of the Second Circuit Court of Appeals finding that a five-year-old child was well settled (even though the issue was not on appeal). *Lozano v. Alvarez,* 572 U.S. 1, 134 S.Ct. 1224 (2014). In delivering the opinion, Justice Thomas alluded to the holding of the District Court: "'Viewing the totality of the circumstances,' the court found sufficient indicia of "stability in her family, educational, social, and most important home life" to conclude the child was well settled in her environment and that repatriation would be 'extremely disruptive'". *Lozano*, 134 S.Ct. at 1231 (internal citations omitted). Further, when considering if a child was "settled and thriving," other courts have pointed to the definition attributed to the word *settled* by the Second Circuit Court of Appeals in the *Lozano* case -- it "should be viewed to mean that the child has a significant emotional and physical

connections demonstrating security, stability, and permanence in it new environment." (citations omitted). *See Taveras v. Morales,* 22 F. Supp. 3d 219 (S.D.N.Y. 2014).

3. Likewise, in *Taveras v. Morales,* 22 F. Supp. 3d 219 (S.D. NY 2014), the child was determined to be settled and thriving. The District Court cited to the Second Circuit opinion in *Lozano* regarding the word *settled,* because it "should be viewed to mean that the child has a significant emotional and physical connections demonstrating security, stability, and permanence in it new environment." (citations omitted).

4. The Ninth Circuit in *Flores Castro v. Renteria,* 382 F. Supp. 3d 1123 (9th Cir. 2019) denied the petition for the return of the child to Mexico. Its analysis began with determining whether the Respondent had concealed the child's whereabouts after the abduction under the concurring opinion of Justice Alito in *Lozano.* As in the case at bar the child attended school where she studied English, participated in school activities, received school awards, made best friends, and has "family members in the United States that support her academic and recreational activities…has established significant connections to Las Vegas." *Id.* at 1131.

5. A list of six factors for a Court to use in determining whether the Child is well-settled was compiled by the district court in *Ahumada Cabrera v. Lozano*, 323 F. Supp. 2d 1303, 1314 (S.D. Fla. 2004). Those factors are: (a) the age of the child; (b) the stability of the child's new residence; (3) whether the child attends school or daycare consistently; (4) whether the child attends church regularly; (5) the stability of the (father's) employment; and (6) whether the child has friends and relatives in the area. Other factors considered by other courts include (1) the child's participation in community or extracurricular activities; (2) the respondent's employment and financial stability; and (3) the immigration status of the respondent and child. *See, In re B. Del C.S.B.*, 559 F.3d 999, 1009 (9th Cir. 2009). A majority of those factors are present in this case.

6. Upon their arrival in the United States Respondent and the Child immediately moved into their in San Jose CA. The Child was enrolled in an outdoor program called Tiny Treks, which is an

innovative, outdoor Parent/Child program and Forest School for toddlers and preschoolers. The curriculum included outdoor learning with science and hands-on learning. This program was made to have parent and child together with a teacher. Respondent supported his son during a difficult time since classes were postponed in person due to COVID. In addition, Respondent arranged with the Director of Tiny Treks to create an extensive at home tutoring program with one of the most experienced teachers in their program. They created a curriculum program for the Child through September 2021, which included reading, writing, science, math and social emotional development. The Child graduated from Tiny Treks outdoor program with high scores and complete preparation for Kindergarten. He also received private tutoring at home from March through September 2021.

In September 2021 the Child was enrolled in Kindergarten in San Ramon, California. For two months. In November 2021 he was enrolled in Mulberry Private School Mulberry located in Los Gatos, California. That school utilized the STEM curriculum in the kindergarten classes. In June 2022 the Child graduated from kindergarten with high scores.

During the summer of 2021 the Child and Respondent spent every Sunday with classmates at Mulberry school to play and spend time together—both parents and children alike. In addition, during the summer of 2021, the Child was enrolled in a local after school mathematics program at Mathanasium located in Los Gatos, California. He attended classes on Tuesdays and Thursdays with a curriculum developed around his current knowledge of mathematics. In addition, he was enrolled in the Coder School also located in Los Gatos, California. That school helps children learn how to code and the faculty created a custom curriculum for the Child. He has currently developed two different video games and sincerely enjoys coding at the age of 6. He is still enrolled in both Mathanasium and coding school.

As of August 2022, the Child has been attending Mulberry school as a first grader. He is beyond his class in mathematics and is thriving with socially and emotionally. On September 9, 2022, the Child was enrolled in the Wushu Karate Academy and remains in Coder school and Mathanasium He

is playing basketball with his classmates for the local Los Gatos team on Sundays and it is anticipated that they will be forming a team. He speaks English well and has no difficulties communicating with others.

The Child is happy living in his current family environment. He lives with the Respondent, in a three-bedroom, two-bathroom home. Respondent has stable employment as a United States Government Contractor. The Child has friends, and extended family in the state and has received consistent medical treatment. The Child and the Respondent are U.S. Citizens and not subject to deportation. The only other citizenship that the Child holds is Afghanistan.

## VIII. PROVISIONAL REMEDIES

With respect to the temporary relief requested:

Respondent agrees that he will not remove the Child from the State of California without prior approval of the Court. Respondent does not agree not to remove the Child from Santa Clara county unless ordered not to do so by further order of the Court.

Respondent agrees to keep the Court advised of his current address during the pendency of this application.

Respondent agrees to deliver the Child's passport to his attorney to be held as an officer of the court.

Respondent does not agree to surrender his own passport without further order of the Court.

## IX. RELIEF REQUESTED

Respondent requests that the relief requested by Petitioner be denied and that the Child be permitted to remain in California. Respondent further requests that Petitioner's request for transportation costs and expenses be denied.

Dated: Sept. 13, 2022              /s/ Ahmad Wali Mohmand
                                   Ahmad Wali Momand, Respondent


Dated: Sept. 13, 2022              LAW OFFICES OF LAWRENCE S. KATZ, P.A.


                                   by:        /s/ Lawrence S. Katz
                                   Lawrence S. Katz
                                   *Admitted Pro Hac Vice*
                                   FBN: 108268
                                   Two Datran Center Suite #1511
                                   9130 S. Dadeland Blvd.
                                   Miami, FL 33156
                                   Tel: (305) 670-8656
                                   Email: lkatz@katzfamilylaw.com

                                   Attorneys for Respondent, Ahmand Wali Momand

Dated: Sept. 13, 2022              SEYMOUR FAMILY LAW


                                   by:        /s/ Brent D. Seymour
                                   Brent D. Seymour (SBN 1487379
                                   940 Adams Street, Suite C
                                   Benicia, CA 94510
                                   Tel: (707) 297-6696
                                   Email: brentseymour@seymour.law

                                   Attorneys for Respondent, Ahmand Wali Momand

---

Response to Petition for Return of Minor Child to Germany

# VERIFICATION

I, Ahmad Momand, declare under penalty of perjury under the Laws of the United States of America, that I understand fully the factual averments contained herein, and that the facts stated in it are true and correct to the best of my knowledge, information, and belief.

Executed on September 13, 2022

                                                                  /s/Ahmad Momand
                                                                    Ahmad Momand

Response to Petition for Return of Minor Child to Germany

-14-